## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| OSCAR SOTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-CV-12554 |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| DET. REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Oscar Soto sues Chicago Police Officers Reynaldo Guevara, Barbara Healy, John Boyle, Victor Gutierrez, John Trahanas,[1] Janit Howard, Barney Graf, and John Pallohusky, and their supervisors, Joseph Salemme and Robert Biebel, claiming that the Officers violated his constitutional rights under the Fourth and Fourteenth Amendments by fabricating evidence and engaging in other misconduct that caused him to be convicted of two crimes he did not commit. Defendants move to dismiss certain portions of Plaintiff's operative complaint, *see* [84], and, for the reasons explained below, this Court denies the motion, [84].

### I.  Allegations of the Complaint[2]

On July 5, 1997, Oscar Arroyo was shot outside his home, while standing with his girlfriend. [118] ¶ 19. Chicago Police Department detectives interviewed

---

[1] Victor Gutierrez and John Trahanas both passed away during these proceedings and are thus represented here by Geri Lynn Yanow, as the special representatives of these defendants' estates. See [71], [105].

[2] The Court draws these facts from Plaintiff's operative complaint [118] and, for present purposes, assumes that they are true. *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). Technically, Plaintiff filed the operative complaint after the parties had briefed Defendants' motion to

eyewitnesses at the crime scene, including Arroyo's girlfriend, D.B., who told the officers she did not get a good look at the shooter. *Id.* ¶¶ 20–21. One eyewitness described the shooter as a bald man with a goatee and a dark complexion; another told police the shooter was sitting in the passenger seat of a white-two-door car with a dark roof. *Id.* ¶¶ 21–22. Arroyo survived the shooting. *Id.* ¶ 19.

Twelve days later, on July 17, 1997, Miguel Salas was killed in a drive-by shooting. *Id.* ¶ 23. Eyewitnesses reported seeing three teenagers (between the ages of 17 and 19) fire on Salas' car from a brown or maroon two-door Buick Riviera, and described the shooter as having a shaved head. *Id.* ¶ 24. Police recovered physical evidence from the scene, including a discharged cartridge case and one fired bullet, and eyewitnesses identified two suspects from a photo array and a lineup, neither of which was Plaintiff. *Id.* ¶¶ 25–26. Indeed, in July 1997, Plaintiff had a full head of black hair and a light complexion, and he was 25 years old. *Id.* ¶ 28.

Yet, instead of attempting to find the real offenders, Defendants sought to hold Plaintiff responsible for both crimes, even though they knew he was innocent. *Id.* ¶¶ 30–31. Officer Healy investigated both the Arroyo and Salas shootings, and "working in concert with the other Defendants," she fabricated a report indicating that a confidential informant had pinned Arroyo's shooting on "a member of the Maniac Latin Disciples gang named "Trouble D," a.k.a. Oscar Soto. *Id.* ¶ 32. Defendants

---

dismiss [84]. But because the new complaint merely adds Geri Lynn Yanow as the special representative for Defendant Trahanas and otherwise asserts the same allegations and claims as the prior complaint [72], the Court has, by agreement, simply applied Defendants' motion to the new complaint.

Guevara, Healy, Boyle, Gutierrez, Trahanas, and Howard then fabricated a false photo identification of Oscar Soto at a photo array in the Arroyo investigation using eyewitness D.B., who had previously told officers that she did not get a good look at Arroyo's shooter. *Id.* ¶¶ 33, 42. Defendants also allegedly fabricated a report, ostensibly based upon the investigation, suggesting the same offender committed both shootings, but, in fact, no evidence suggested the same perpetrator committed both crimes, and no evidence tied Plaintiff to Salas' murder. *Id.* ¶ 35.

In fact, the fabricated evidence directly contradicted handwritten notes from Officers Graf and Pallohusky, who worked the Salas case prior to the involvement of Defendants Guevara, Healy, Boyle, Gutierrez, Trahanas and Howard, which showed eyewitnesses had identified two individuals (Julio G. and Alex R.) as being in the shooter's vehicle. *Id.* ¶ 36. Yet Graff and Pallohusky created a typed lineup report falsely stating that none of the witnesses identified Julio G. or Alex R. *Id.* ¶ 37. Despite the lack of evidence linking Plaintiff Soto to any crime, Officers Guevara, Healy, Boyle, and Gutierrez also fabricated two lineup procedures in which eyewitnesses purportedly identified Plaintiff as the shooter in both the Arroyo and the Salas investigations. *Id.* ¶ 40.

Defendants Salemme and Biebel approved the other Officers' false police reports, which were then provided to prosecutors and otherwise used to cover up Defendants' misconduct. *Id.* ¶¶ 45–46, 49. Plaintiff claims that, because of Defendants' misconduct, he was charged with both Salas' murder and Arroyo's attempted murder. *Id.* ¶¶ 51, 53, 57. Plaintiff maintained his innocence throughout

proceedings in both cases. *Id.* ¶¶ 40, 56, 63. He went to trial in connection with the Salas case and was ultimately acquitted. *Id.* ¶ 55. But he pled guilty to Arroyo's shooting to avoid facing another trial and a potentially longer sentence. *Id.* ¶ 55. In the end, he was released on parole in 2003, after spending three years behind bars (including pretrial detention) for crimes he did not commit. *Id.* ¶ 63.

In claiming that Officer Guevara (and the other Defendants) framed him, Plaintiff notes that he is not the only person victimized by this police officer. In fact, Plaintiff alleges, Guevara "has framed dozens of innocent people over the span of two decades," at least 46 of whom (as of January 2026) have had their convictions thrown out because of Guevara's misconduct. *Id.* ¶¶ 93–94. Plaintiff alleges that Guevara has "a long history of engaging in precisely the kind of investigative misconduct that occurred in this case, including obtaining false eyewitness identifications through manipulated identification procedures, manipulating witnesses, fabricating evidence, suppressing exculpatory evidence, and coercing false confessions and false statements from suspects and witnesses, and using physical and psychological violence, all in the course of maliciously prosecuting innocent people," like Plaintiff. *Id.* ¶ 95. Plaintiff alleges numerous examples of Guevara's misconduct occurring throughout the 1980s and 1990s. *Id.* ¶ 99. Based upon these allegations, Plaintiff claims the City of Chicago maintained a policy of tolerating, facilitating, and condoning such conduct, by promulgating a "code of silence" in which police misconduct was intentionally overlooked and covered up. *Id.*

4

Plaintiff alleges that, by June 14, 1999, when a judge acquitted him of Salas' murder, he had spent nearly two years in custody. *Id.* ¶¶ 5, 54. He spent another approximately 9 months in custody in connection with the Arroyo case, and was released in 2003. *Id.* ¶ 6. Twenty years later, on July 25, 2024, as a result of an investigation into Guevara's misconduct, Plaintiff's conviction in connection with the Arroyo shooting was vacated, and all charges against him were dismissed. *Id.* ¶¶ 68, 147.

On December 6, 2024, Plaintiff initiated this action, *see* [1]; he amended his complaint on April 3, 2025, *see* [72], and again on January 27, 2026, *see* [118]. He asserts several federal claims, pursuant to 42 U.S.C. § 1983, including violation of his Fourteenth Amendment Due Process rights (Count I), malicious prosecution and unlawful detention in violation of the Fourth and Fourteenth Amendments (Count II), failure to intervene (Count III), conspiracy to violate his constitutional rights (Count IV), and municipal liability against the City of Chicago (Count V). [118] at 26–33. Plaintiff also asserts several state law claims against the individual Defendants, including malicious prosecution (Count VI), intentional infliction of emotional distress (Count VII), willful and wanton conduct (Count VIII), and civil conspiracy (Count IX). *Id.* at 33–36. And he asserts state law claims against the City for respondeat superior (Count X) and indemnification (Count XI). *Id.* at 36–37. Plaintiff asserts all claims based upon Defendants' conduct generally, lumping together both the misconduct alleged in connection with the Salas murder and the misconduct alleged in connection with the Arroyo shooting.

Defendants now move to dismiss portions of the operative complaint under Federal Rule of Civil Procedure 12(b)(6). *See* [84]. In particular, Defendants argue that Plaintiff's claims are time-barred to the extent they are based upon the prosecution for Salas' July 17, 1997 murder. [84] at 4–6, 7–8. Defendants also argue that, to the extent Plaintiff's Due Process claim remains timely, it nonetheless fails as a matter of law. *Id.* at 6. After full briefing by the parties, this Court resolves the motion below.

## II.    Applicable Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To satisfy the plausibility standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Courts accept well-pleaded facts "as true at the pleading stage" and draw all reasonable inferences in the plaintiff's favor. *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014); *Reger Dev, LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). The courts, however, need not accept legal conclusions or conclusory allegations merely reciting the elements of the claim. *See Adams*, 742 F.3d at 728.

### III.    Discussion & Analysis

Defendants argue that Plaintiff's federal and state claims are all time-barred to the extent they stem from alleged misconduct in connection with the investigation of Salas' murder and Plaintiff's prosecution for that crime.  [84] at 3.

### A.    The Timeliness of Plaintiff's Federal Claims

Turning first to Defendants' motion to dismiss Plaintiff's federal claims as time-barred, the Court notes that, "typically, affirmative defenses, like timeliness, are not properly resolved at the pleading stage." *Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 930 (7th Cir. 2025) (citing *Vasquez v. Indiana Univ. Health, Inc.*, 40 F.4th 582, 588 (7th Cir. 2022)).  Indeed, timeliness issues "are heavily fact-dependent" and such questions generally "are best left for summary judgment or trial so that the court may rule on them with a complete factual record." *Id.* (citing *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015)).  In "the 'rare' circumstance in which the complaint pleads facts that conclusively establish that the plaintiff's claim is time-barred," however, "dismissal at the pleading stage can be appropriate." *Id.*  (quoting *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022)).

A motion to dismiss based upon a statute of limitations defense, when raised, is properly brought under Rule 12(b)(6).  *Smith v. Vill. of Broadview*, No. 19-CV-5319, 2020 WL 3050768, at *9 (N.D. Ill. June 8, 2020) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).  At this stage, a claim will survive "as long as there

7

is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense." *Reilly*, 142 F.4th at 930.

Defendants move to dismiss Plaintiff's claims only to the extent they remain predicated upon alleged misconduct in connection with the Salas case. [84] at 4–8. Indeed, in their motion, they concede that they are not challenging Plaintiff's claims "arising from his prosecution and detention for the attempted murder of Arroyo." *Id.* at 3. Because of the way Plaintiff has pled his claims, however, this means Defendants do not seek to dismiss any claims in their entirety, but simply seek to dismiss certain portions of each claim, *i.e.,* those stemming from misconduct specifically geared toward the Salas prosecution.

Defendants' strategy remains understandable, as the statute of limitations may ultimately winnow the permissible scope of Plaintiff's claims. Even though Plaintiff makes no distinction between the two cases in his claims, Plaintiff obtained a favorable outcome in the Salas murder case on June 14, 1999, when he was acquitted, and he obtained a favorable outcome in the Arroyo attempted murder case on July 25, 2024, when the court vacated his guilty plea and the State dismissed all charges. Had Plaintiff differentiated his claims, those relating to the Salas case likely would be time-barred, as Plaintiff did not file this lawsuit until December 6, 2024, 23 years after the statute of limitations ran. *See, e.g., Herbst v. City of Chicago*, No. 24-2836, 2025 WL 1275775, at *2 (7th Cir. May 2, 2025), *cert. denied sub nom. Herbst v. Chicago, IL*, No. 25-673, 2026 WL 490557 (U.S. Feb. 23, 2026) ("Federal courts borrow the statute of limitations from the forum state (here, Illinois) for § 1983 claims, and

8

Illinois law provided Herbst two years to sue.") (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007); 735 ILL. COMP. STAT. 5/13-202); *Dukes v. Washburn*, No. 21-CV-03672, 2026 WL 579205, at *6 (N.D. Ill. Mar. 2, 2026) ("accrual for due process claims, like here, begin where the defendant is acquitted or a direct appeal reverses the conviction."); *Evans v. City of Chicago*, No. 04 C 3570, 2005 WL 8166138, at *5 (N.D. Ill. Aug. 29, 2005) ("Under the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), if a judgment for plaintiff on his § 1983 claims 'would necessarily imply the invalidity of his conviction or sentence,' the statute of limitations does not begin to run until that conviction or sentence has been terminated in plaintiff's favor. Thus, if a § 1983 claimant wishes to toll the statute of limitations, he or she first "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.") (quoting *Heck*, 512 U.S. at 486–87).

As Plaintiff correctly notes, however, a motion to dismiss under Rule 12(b)(6) "doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (citing *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014)). A claim is plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. If the allegations "plausibly suggest" that the

"plaintiff is entitled to relief," the case proceeds. *Williams v. City of Chicago*, No. 22-CV-1084, 2022 WL 3716214, at *3 (N.D. Ill. Aug. 29, 2022) (citing *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019)).

Because Plaintiff's claims remain predicated upon allegations that plausibly suggest Plaintiff may be entitled to relief—specifically, those allegations stemming from the handling of the Arroyo case—Plaintiff may proceed at this stage. Defendants "attempted winnowing" remains "better saved for summary judgment," *Towns v. Peoples Gas Light & Coke Co.,* No. 23-CV-16316, 2024 WL 4590595, at *9 (N.D. Ill. Oct. 28, 2024), and the Court fully expects Defendants to raise this issue again at that stage. The parties can at that time parse the evidence concerning which allegedly fabricated pieces of evidence related to which specific prosecution, the degree to which such evidence overlapped in both cases, and the feasibility of bootstrapping time-barred claims to any timely claims.[3]

### B. The Timeliness of Plaintiff's State Law Claims

Defendants also argue that Plaintiff's state law claims (for malicious prosecution, intentional infliction of emotional distress, willful and wanton conduct,

---

[3] Plaintiff was prosecuted separately, in two different cases at two different times, for Salas' murder and for Arroyo's attempted murder. And, for the most part, the evidence relevant to each case appears to have been separate. For example, Plaintiff alleges that Defendant Healy fabricated a reported fingering Plaintiff as the culprit in the Arroyo shooting, [118] ¶ 32; that Defendants fabricated a false photo identification of Soto at a phot array in the Arroyo investigation, *id.* ¶ 33; fabricated a (presumably different) photo array identification in the Salas investigation, *id.* ¶¶ 37–38. But Plaintiff also alleges that Defendants fabricated a report suggesting that eyewitness testimony fingered the same person for both shootings. *Id.* ¶ 35. As the Seventh Circuit has noted, "one episode of malicious prosecution (or constitutional violations leading to wrongful conviction) has just one trigger: exoneration." *Am. Safety Cas. Ins. Co. v. City of Waukegan, Ill.*, 678 F.3d 475, 481 (7th Cir. 2012). At a later stage, the parties will need to address (and the Court will need to decide) whether Plaintiff's pleading theory has properly brought one episode of malicious prosecution or two; and the parties will be better equipped to parse specific claims and defenses on a fully-developed record.

civil conspiracy, respondeat superior, and indemnification) are also barred, but under § 8-101(a) of the Illinois Tort Immunity Act. *See* [84] at 7–8.

Plaintiff's state law claims remain "subject to a one year statute of limitations under the Illinois Tort Immunity Act." *Thurmond v. Mills*, 570 F. Supp. 2d 1045, 1046 (N.D. Ill. 2008) (citing 745 ILL. COMP. STAT. 10/8–101). *See also DeLarosa v. Vill. of Romeoville*, No. 24-1715, 2024 WL 4523808, at *2 (7th Cir. Oct. 18, 2024) (state law malicious prosecution claims are "governed by the one-year statute of limitations that applies to claims against local governments and governmental employees"; this is so even when the state-law claims "are joined with § 1983 claims governed by a two-year statute of limitations") (citing *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005); 745 ILL. COMP. STAT. § 10/8-101).

And, as above, a state malicious prosecution cause of action accrues when "the criminal proceeding at issue is terminated in plaintiff's favor," *Thurmond*, 570 F. Supp. 2d at 1046 (citing *Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998), which in the Salas case was 1999, when Plaintiff was acquitted. Thus, if Plaintiff had sued based solely upon Defendants' conduct in connection with the Salas case, his cause of action would have accrued in 2000, and his claim would unquestionably be barred.[4]

---

[4] So too Plaintiff's other state law claims. *See Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 762 (N.D. Ill. 2012) (when intertwined with a malicious prosecution claim, an IIED claim accrues concurrently with the malicious prosecution claim and does not accrue until favorable termination); *Ziarko v. Soo Line R.R. Co.*, 641 N.E.2d 402, 406 (Ill. 1994) (willful and wanton conduct does not constitute an independent cause of action for a tort claim under Illinois law; as a result, the accrual date for this claim tracks the accrual date for the underlying cause of action); *Tri-Plex Tech. Servs., Ltd. V. Jon-Don, LLC*, 241 N.E.454, 465 (Ill. 2024); *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) (civil conspiracy does not constitute an independent tort but instead relies upon the plaintiff to independently state an underlying cause of action whose viability the conspiracy claim depends upon); *Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009) (*respondeat superior* claim rises or falls with the underlying tort claim against the employee and the same accrual date applies); 745 ILCS 10/9-102 (an

11

But, as above, Plaintiff does not sue solely based upon Defendants' conduct in the Salas case. Instead, he has pled his claims as stemming from the investigation and prosecution of both cases jointly. *See* [118]. And Plaintiff's claim, if based upon Plaintiff's allegations concerning the investigation and prosecution of the Arroyo case, remains timely, because the cause of action accrued, at the earliest, in July of 2024, and Plaintiff filed this lawsuit less than six months later. As a result, this Court cannot say that Plaintiff's state law malicious prosecution claim is implausible on the current record.

### C. The Sufficiency of Plaintiff's Due Process Allegations

Finally, Defendants argue that, even if Plaintiff's Due Process claim remains timely, it nevertheless fails as a matter of law because he was acquitted. The Seventh Circuit has consistently held that a due process claim based upon fabricated evidence requires the fabricated evidence to be "used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012). And the use of fabricated evidence at trial does not result in a deprivation of liberty when the trial itself results in acquittal. *See Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) ("Bianchi and his colleagues suffered no deprivation of liberty; they were acquitted at trial."); *Alexander v. McKinney*, 692 F.3d 553, 557 n.2 (7th Cir. 2012) ("It would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of the trial is to *effectuate* due process.").

---

indemnification claim brought against a local public entity necessarily depends upon a tort claim by an employee within the scope of employment; the City's liability thus matches that of the employee for the underlying tort).

Because Plaintiff was acquitted in the Salas trial, the Court agrees with Defendants that he suffered no deprivation of liberty because of the prosecution against him. *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) (describing *Brady*'s materiality standard and stating "if the fabricated evidence was immaterial, it cannot be said to have caused an unconstitutional conviction and deprivation of liberty").

The prosecution of Plaintiff itself does not constitute a deprivation of liberty, even if it lacked probable cause, because "there is no such thing as a constitutional right not to be prosecuted without probable cause." *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (quoting *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013)). Nor does pretrial detention alone suffice: the Supreme Court has held that claims based upon allegations of unlawful pretrial detention must be framed through the Fourth Amendment as opposed to the Fourteenth Amendment. *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 369 (2017). Because Plaintiff also alleges malicious prosecution and unlawful detention under the Fourth and Fourteenth Amendments, such reframing remains improper here, and dismissal of any claim based solely upon the Salas case would be appropriate.

It is not clear, however, that Plaintiff's fabrication of evidence claim remains foreclosed when predicated upon his allegations of misconduct in connection with the Arroyo prosecution, where Plaintiff pled guilty and later had his conviction vacated. *See In re Watts Coordinated Pretrial Proc.,* No. 19-CV-1717, 2022 WL 9468206, at *7 (N.D. Ill. Oct. 14, 2022) ("A fair reading of Seventh Circuit fabricated evidence jurisprudence, from *Whitlock* to *Patrick*, reveals that the due process violation occurs once the material fabricated evidence is introduced 'in some way'—or more precisely, 'in his criminal case'— that results in the criminal defendant's conviction and ultimately deprives him of his

13

liberty. One such way, but not the only way, is through a conviction following a trial. Another way is when the fabricated evidence is used to coerce the defendant to plead guilty."); *Mendoza v. City of Chicago*, No. 23-CV-2441, 2024 WL 1521450, at *3 (N.D. Ill. Apr. 8, 2024) (finding that plaintiffs' complaints "plausibly allege that the fabricated evidence influenced or caused" them to plead guilty and, as a result, they may bring § 1983 claims that Defendants fabricated evidence in violation of the Due Process Clause).

As a result, at this point in the litigation, this Court declines to dismiss any part of this claim for the same reasons articulated above: "Dismissal of a claim pursuant to Rule 12(b)(6) is an all-or-nothing proposition; we cannot rule on parts of a claim like we can at summary judgment." *Williams v. City of Chicago*, No. 22-CV-1084, 2022 WL 3716214, at *4 (N.D. Ill. Aug. 29, 2022) (citing *Bilek v. Fed. Ins. Co.,* 8 F.4th 581, 587 (7th Cir. 2021); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)).

## IV.    Conclusion

For the reasons explained above, this Court denies Defendants' partial motion to dismiss, [84].

Dated: March 31, 2026                                     Entered:

_____\
John Robert Blakey
United States District Judge

14